Beatty v. Titus.

STATE, EX REL. ARTHUR BEATTY, v. THOMAS TITUS, DIRECTOR OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF WARREN.

1. The burthen of erecting, maintaining and repairing the bridges, where necessary, on public highways in a county, devolves upon the county.
2. Where the expense of repairing a bridge shall not exceed the sum of $50, the overseer of the highways within whose limits the same may be, and the chosen freeholder of the township, are authorized to superintend the repairing or contract for the work and materials.
3. In such case, upon the bill, duly verified, being presented to the director of the board of chosen freeholders, it is his duty to draw on the county collector for the amount.

On rule for *mandamus.*

Argued at November Term, 1884, before Justices DEPUE, SCUDDER and PARKER.

For the relator, *Oscar Jeffery.*

*Contra, Wm. M. Mackey.*

The opinion of the court was delivered by

PARKER, J. The relator seeks for a *mandamus* to compel the defendant, as director of the board of chosen freeholders of the county of Warren, to draw on the county collector of said county, in favor of the relator, for the sum of $50, due him for repairs on a certain bridge in said county. The bridge in question spans the Morris canal at Jackson avenue, in the borough of Washington.

By the state of the case it appears that a bridge has been maintained there for nearly forty years. At first it was a private bridge, but in 1855 the owner of a farm fronting on the road leading to the bridge sold building-lots by deeds calling for a street there. About the same time the owner of

the adjoining farm sold lots and dedicated the street. Several dwelling-houses were erected on the lots thus sold, on both sides of the canal, access to which with vehicles was obtained by crossing on the bridge in question. For more than twenty years said street has been used by the public as a highway. While it was so used the borough of Washington was incorporated. The twenty-sixth section of the act of incorporation (passed in 1868) provides that all roads, highways and streets then open and in public use in said borough should be and remain public streets and highways until the same should be vacated according to law. Since that time the said street has been, from time to time, worked upon and repaired by the street commissioner of the borough of Washington, at the expense of the borough.

About the year 1870 a new bridge was erected there, by direction of the board of chosen freeholders of the county of Warren, with the funds of the county, and since that time, up to 1884, the expense of keeping the bridge in repair has been defrayed out of the county treasury.

On the 10th day of April, 1884, the street commissioner of the borough of Washington, (who by law performs the duties of overseer of the highways,) gave notice in writing to the chosen freeholder in said borough that the bridge was unsafe and needed repairs. The chosen freeholder examined the bridge, and finding it to need repairing, put up notices that at a certain time and place, therein stated, a contract to repair the bridge would be bid for, and put out to the lowest bidder. At the time and place so advertised, the relator attended, and, being the lowest bidder, the contract for work and materials was publicly awarded to him for the sum of $50.

After the repairs were finished the relator made out the bill, and after having it approved by the chosen freeholder of Washington, presented it, duly verified, to the director of the board of chosen freeholders and requested him to draw on the county collector in his favor for the amount, which the director refused to do.

The application for a *mandamus* in this cause is objected to,

first, on the ground that the bridge was not a public structure such as the county was legally bound to build or repair; and secondly, because, if the relator be entitled to payment for his work and materials out of the county treasury, *mandamus* is not the proper process.

It is alleged that Jackson avenue was not, at the time the relator did the work and furnished the materials, a public highway, and not being a public highway, the county was not obliged to maintain a bridge on its line. From the facts agreed upon and hereinbefore stated, it conclusively appears that said road was a public highway. By selling lots adjoining it, and reserving a street, it had been dedicated to the public. It had been used by the public for over twenty years. The public authorities had accepted the road by working upon it and keeping it in repair. It 1868 it had been declared to be a public highway by the law incorporating the borough of Washington. In 1870 the board of chosen freeholders recognized it as a public road by erecting a bridge at the place in question. Being a public highway in 1884, the burthen of repairing the bridge in the line of Jackson avenue devolved upon the county. It is the duty of the chosen freeholders of a county to erect, maintain and repair bridges, where necessary, on the public highways therein. The county must pay the cost thereof. The mode of determining when it shall be necessary to erect or repair a bridge, and the mode of disbursing money in payment, differs somewhat with the amount of the expense incurred. The third section of the act respecting bridges provides that where the expense of repairing a bridge shall not exceed $50, the direction to repair shall be made by the overseer of highways within whose limits the same may be, and the chosen freeholder of the township, and they are authorized to superintend or contract for the doing thereof.

The remaining question is whether a *mandamus* will lie to compel the director of the board of chosen freeholders to draw on the county collector for the relator's bill. The section of the Bridge act before mentioned enacts that the director of the

Batchelder v. Erb.

board of chosen freeholders *shall* draw on the county collector for the expense where the bill does not exceed the sum of $50, and that the county collector *shall* pay such order out of any county moneys in his hands. The relator is not obliged to present his bill to the board of chosen freeholders for action. The county collector is ordered to pay the bill only when the director of the board draws upon him. Unless the director draws on the collector the relator cannot get paid for his work and materials. The contract was made with relator, and the work superintended and passed by the proper authorities. When the bill was presented to the director of the board, and a request made by relator that he draw upon the collector for the money, it was the duty of the director so to do. He having refused, a *mandamus* is the proper remedy.

Let a *mandamus* issue.